## MARY SCHUBKAGEL v. JOSEPH DIERSTEIN.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO 2 OF ALLEGHENY COUNTY.

Argued October 30, 1889—Decided January 6, 1890.
[To be reported.]

1. A law student does not stand upon the same plane with an attorney at law in the matter of privileged communications; and when such student is employed to conduct before an alderman, a prosecution for fornication, communications made to him by the prosecutrix in connection therewith are not privileged.

2. Both the alderman and the law student are competent to testify for the defendant that a settlement of such prosecution, which they assisted in making, included a claim for breach of a contract to marry, alleged to have been entered into on the same date the fornication was charged to have been committed.

3. When error is assigned to the refusal to arrest a judgment, the Supreme Court cannot thereunder pass upon the sufficiency of the evidence to support the verdict; as the question whether a judgment should be arrested depends upon the sufficiency of the plaintiff's narr, and if that be sound he is in general entitled to judgment.

4. Though it is error to nonsuit a plaintiff who has presented a case sufficient to go to the jury, the refusal to grant a nonsuit is not reviewable by the Supreme Court; for the defendant, after giving his evidence, still has it in his power to ask the court to instruct the jury upon the sufficiency of the plaintiff's evidence to maintain the action.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 84 October Term 1889, Sup. Ct.; court below, No. 236 October Term 1887, C. P. No. 2.

On September 2, 1887, Mary Schubkagel brought assumpsit against Joseph Dierstein to recover damages for an alleged breach of a contract to marry the plaintiff. The defendant pleaded not guilty.

At the trial on January 31, 1889, the following facts were shown:

In June, 1887, the defendant, then about sixty-eight years of age, lived with his wife in one end of a double house, belonging to himself, situated in the city of Allegheny. The plaintiff, who was a widow and about sixty-four years of age, occupied the other end of the house as his tenant. The defendant's wife died on June 15th, of that year. During her sickness the plaintiff assisted in waiting on her, and a door, which communicated between the plaintiff's and defendant's sides of the house, was kept unlocked, so that the defendant and his wife could get help whenever they wanted it. After Mrs. Dierstein's death, this door remained unlocked, and the defendant frequently passed through it into the plaintiff's apartments, and paid friendly visits to her. Testimony for the plaintiff tended to show that on July 1, 1887, the defendant commenced a courtship which culminated on July 15th in a contract between the plaintiff and defendant to marry. The plaintiff in her testimony stated that no time was fixed for the marriage ceremony; that the defendant did not refuse to marry her, but simply locked the door communicating between their apartments, quit coming to see her and ceased to talk with her or have anything to do with her. She testified further on cross-examination, as follows:

Q. Did he ever refuse to marry you? A. I asked him about the marriage, and he said that his property and everything were all gone; "I formerly been worth eight thousand dollars, and whoever would get married to me would have to marry a poor man."

Q. What did you say? A. I said all right, left him and went and sued him.

### Statement of Facts.

Q. What suit did you bring? A. I had loaned him two hundred dollars, for which I had no receipt or note, and I sued him for to recover that much money.

Q. Did you receive it? A. I received the money.

Q. Then because he locked his door, you went and sued him for breach of promise? A. Yes, sir; I sued him for $200, and then for breach of promise.

It was further shown that after the commencement of the present action the defendant was married to another person.

At the conclusion of the plaintiff's case the defendant moved for a compulsory nonsuit for the following reasons:

1. Because the plaintiff has failed to prove the statements set forth in the declaration, which constitutes the plaintiff's cause of action.

2. That the plaintiff has failed to prove any legal contract of marriage, together with a refusal to marry.

3. That under all the evidence in this case, there is no legal contract of marriage proven and a breach of the same, upon which the case can be submitted to the jury.

By the Court: Motion overruled; exception.[5]

The defendant, testifying on his own behalf, denied the making of any contract to marry the plaintiff. He further testified that after his first wife's death he had been compelled to pay about nine thousand dollars of bail money; that he sold his property in order to pay this debt, and at the time of the trial owned nothing.

Henry Ferring, called for defendant, testified that he was "reading law" and had done business for the plaintiff in the summer of 1887, as her attorney.

Q. In what cases?

Objected to, on the ground that the witness was rendering service to the plaintiff as an attorney.

We propose to show that the witness attended to some suits between this woman and this man, and that this and all other cases were settled for $200.

Q. Did you appear as counsel for this plaintiff at any place at that time? A. Yes, sir.

Q. When was it that you did so? A. It was some where in 1887; I don't recollect the date; it was in August, I believe.

Q. Before what alderman or squire? A. Before Alderman Stork, Seventh ward, Allegheny.

Q. What cases did you appear in, and what did Mrs. Schubkagel say and what was done?

Objected to. The records are the best evidence, and the plaintiff's counsel objects to the witness going into the character of the cases, as incompetent and irrelevant.

By the court: If witness acted as her attorney, it's like a doctor, it's confidential communications, and he is not bound to answer. Objection sustained; exception.[1]

Adam Stork, called for defendant, testified that he was an alderman in Allegheny city, and had business before him between the parties, in August, 1887; he had the records with him:

Defendant's counsel offers to show by the witness on the stand that there were two cases before him, in which he acted in the capacity of an alderman, and that the cases were heard before him; that Mary Schubkagel was the plaintiff and prosecutrix, and the present defendant the defendant, and that he heard and disposed of and settled the cases, as shown by the two transcripts now shown to the court, which settlement included the present case.

—The first of the two transcripts referred to in this offer, showed a criminal prosecution against Joseph Dierstein, upon an information made by Mary Schubkagel, charging the defendant with having committed the offence of fornication with the prosecutrix on July 15, 1887, which information was withdrawn by her on August 31, 1887. The other transcript exhibited an action of debt brought by Mary Schubkagel against Joseph Dierstein to recover $200 alleged to have been loaned to the defendant on June 25, 1887; and showed that on August 24, 1887, judgment was entered in favor of the plaintiff for said sum, and that on August 26, 1887, it was paid into the office of the alderman and the plaintiff acknowledged satisfaction upon the record.

Offer objected to as incompetent and immaterial.

By the court: Objection sustained; exception.[3]

At the close of the testimony the court, MAGEE, J., charged the jury in part as follows:

The courtship apparently, from the testimony of the plaintiff herself, was of short duration. He began his attentions about

the first of July, coming to see her then frequently, and these at-
tentions were continued for fifteen days; he then became en-
gaged, according to her statement, on the fifteenth of July; the
attentions and demonstrations continued for fifteen days longer,
and then came to an end.   The wife of the defendant had died
on the fifteenth of the preceding month, June, so that it was
very prompt work.   People may make up their minds rapidly, or
take a longer time in such affairs; so that these things are only
elements that enter into the case for your consideration in the
determination of what was really done.   The plaintiff says that
on the fifteenth of July, 1887, Mr. Dierstein said he would
marry her, promised to do it, and she said she was willing.
That makes a contract; a proposition on one side and an accept-
ance on the other, and the law says that if such a contract is
not kept, then comes in the question of damages.   You have
the affirmation of this contract on the one side and the denial
of it on the other.

Now as to the defence : The defendant says he did not make
any contract; that their relationship was only friendly; they
were in the same house, and families often live in the same
houses and under the same roof in different apartments, and
that was their case, and that his wife had been sick; the
plaintiff was his neighbor and that she had been kind to his
wife ; that the door between their apartments had been left
open.   With an unlocked door between families in the same
house and sickness going on, it is not astonishing that that
should be the case, and that there was this intimacy.   You can
account for this friendly intercourse on the part of the defend-
ant. . . . . After all I do not consider that it is a breach of
promise of a very serious character.   It was all done in a very
short time.   It was not a long courtship and a disappointment
of a life that may occur where engagements are long postponed
and then broken.   If he made an engagement, he broke it
promptly, but you could not find any damages against him if
there was no contract.   It must be found to have been abso-
lutely made between the parties, with the understanding that
there was an engagement of marriage.   If you find that to be
the fact then comes the question of damages.

[If plaintiff has lost any money, if she has lost the pleasures
and comforts that go with a relationship of that kind; if she has

lost the advantages of maintenance—because when a man takes a wife he has to take the responsibility as well as the fun—he must furnish the means for her support; the law imposes that upon the relationship and she would be entitled to a support; and if you find that he was in shape to furnish that, you take that into consideration and the law permits evidence to be offered as to the extent of a man's ability, that is, to indicate the character of the home and home comforts that his means will furnish to her as his wife, of which she may be deprived in the future by the breach.] [6] If he has nothing, the damages are less of course, because the contract, if performed, would not furnish much money, and the defendant is of that age that unless he had money at the time, you may assume that a man of the age of sixty-eight can do no more by his own labor than to maintain himself. [If he has money, and he has undertaken to get rid of it to avoid responsibility, then you ought not to allow that; you ought to let the lawyers hunt it up, if it is concealed in that way, and whether or not the defendant is old, he has taken upon himself that he has the capacity to perform the duties of a husband, because he has married since.] [7] Whether that was done for the purpose of getting a home on his part or not, is a matter for your consideration. I think all these cases can be trusted to twelve intelligent and capable men, under the evidence, to do what is right and proper in the matter.

The jury rendered a verdict in favor of the plaintiff for $600. Thereupon the defendant filed a motion for a new trial and in arrest of judgment, assigning, inter alia, as reasons in support thereof, that the verdict was against the weight of and unwarranted by the evidence, and that the court erred in overruling the defendant's motion for a compulsory nonsuit, because the plaintiff had failed to prove a legal contract of marriage and a breach thereof. After argument, the motion was overruled by the court without opinion filed,[10] and judgment was entered on the verdict, whereupon the defendant took this appeal, assigning, inter alia, for error:

1, 3. The overruling of defendant's offers.[1] [3]

5. The refusal of the motion for nonsuit.[5]

6, 7. The parts of the charge embraced in [ ] [6] [7]

10. The refusal of the motion for new trial and in arrest of judgment.[10]

*Mr. Frank Whitesell* (with him *Mr. W. W. Whitesell*), for the appellant :

1. The court erred in applying to a law student and an alderman the rule governing privileged communications made to an attorney : Holmes v. Comegys, 1 Dall. 439 ; Matthews' Est., 5 Clark 149 ; Parry v. Almond, 12 S. & R. 284. And even an attorney would not be privileged from disclosing the matters embraced in our offer : Heister v. Davis, 3 Y. 4 ; Heaton v. Findly, 12 Pa. 304 ; Lewis v. Van Buskirk, 4 Pa. 309 ; Beesin v. Beesin, 9 Pa. 279 ; Jeanes v. Fridenberg, 3 Clark 199.

2. The testimony fails to show any breach by the defendant of the alleged contract, no day ever having been set for the marriage, and the defendant never having been requested to fix a day : Fible v. Coplinger, 13 B. Mon. (Ky.) 464 ; Reed v. Clark, 47 Cal. 474 ; Cole v. Holliday, 4 Mo. App. 94 ; Prescott v. Geupler, 32 Ill. 323 ; Coil v. Wallace, 34 N. J. L. 291. The parts of the charge assigned for error were unwarranted by the testimony, and the latter was virtually an instruction that damages for a fraudulent secretion of defendant's property could be recovered in this action.

*Mr. James Fitzsimmons* (with him *Mr. John S. Robb*), for the appellee :

1. Ferring testified that he acted as the plaintiff's attorney and counsel, and, taking the record as we find it, any communications made to him were privileged. It cannot be assumed from the mere fact that he said he was " reading law," that he was not an attorney. All attorneys must read law so long as they are engaged in practice. It was the duty of the defendant to make the facts clearly apparent on the record. On the testimony as it stands, Ferring appears to have been an attorney both de facto and de jure.

2. If the court should think Ferring was not, as an attorney, subject to the rule of privilege, still the offer made while he was on the stand was incompetent. He could not testify to the contents of the records ; the records themselves were clearly the best evidence. Any testimony Mrs. Schubkagel may have

given in these cases would be irrelevant here, as the records offered by the defendant showed them to be entirely distinct from the present case and to have nothing to do with it. For the same reason the records, when offered, were inadmissible. No proper offer to show by the alderman a settlement of this case, outside of those records, was made.

3. The refusal of the court to grant a compulsory nonsuit is not reviewable on error. Nor does the refusal to grant a new trial or arrest the judgment require remark. The part of the charge embraced in the sixth assignment of error is in exact accord with many well considered decisions of this court. Nor could the jury have been misled by the instruction referred to in the seventh assignment. Referring to the fact, clearly shown by the defendant's own testimony, that he had endeavored to dispose of his property, so as to reduce the verdict in this case, the court intimated that this fact should have no influence on the amount of the verdict, which certainly was not erroneous.

OPINION, MR. JUSTICE McCOLLUM:

This suit was brought on September 2, 1887, and the plaintiff was then sixty-four and the defendant sixty-eight years old. She became a widow in 1885, and he a widower on June 15, 1887. According to her claim, he commenced courting her on the 1st of July, and on the 15th of that month promised to marry her. While the courtship, as described by her and her witnesses, was brief, it was unremitting and ardent; and in consequence of it the aged suitor became a defendant in a prosecution for the crime of fornication and in an action for breach of promise of marriage.

We cannot pass on the sufficiency of the evidence to support a verdict, on a refusal to grant a nonsuit or to arrest judgment. "When the error alleged is in arresting judgment, we cannot look into the testimony for aid in pronouncing upon the action of the court. The question is upon the sufficiency of the plaintiff's narr. If that be sound, the plaintiff is, in general, entitled to judgment on his verdict:" Aronson v. Railroad Co., 70 Pa. 68. "It is error to nonsuit a plaintiff who has presented a case sufficient to go to the jury, but it is not error to refuse a nonsuit; for, when the defendant has given his evidence, he has it still in his power to ask the court to instruct the jury

upon the insufficiency of the plaintiff's evidence to maintain the action: " Lehman v. Kellerman, 65 Pa. 489.

The excerpts from the charge which constitute the sixth and seventh specifications are, when read in place, unobjectionable and free from error.

The offers to prove that this cause of action was included in a settlement by the parties of two cases before Alderman Stork were material, and should have been allowed. In one of these cases it was claimed by the plaintiff that the defendant had carnal knowledge of her on the 15th of July. It related to an act committed on the day it is alleged the promise of marriage was made. The propriety of joining in one settlement two causes of action of this nature, arising between the same parties on the same day, cannot be doubted.

Ferring and Stork were competent to testify to the terms of the settlement, and what was included in it. It was made in their presence, and they assisted in making it. It is difficult to see what there was in the nature of a confidential communication about it. Ferring was a law student, employed by the plaintiff to advise and assist her in her suits against the defendant. But her communications to him while so employed are not privileged. A law student is, in this respect, on no higher plane than a blacksmith retained in a like service. In Barnes v. Harris, 7 Cush. 576, it was held that communications made while seeking legal advice in a consultation with a student at law in an attorney's office, he not being the agent or clerk of the attorney for any purpose, are not protected. In 1 Greenl. Ev., note to § 239, the rule on this subject is stated thus : " It seems indispensable to the existence of the privilege that the relation of counsel or attorney and client should exist, and that the communication be made in faith of the relation ; and then the privilege of secrecy only extends to the parties to the relation, and their necessary agents and assistants. Hence the privilege does not attach if one is accidentally present, . . . or casually overhears the conversation, . . . . or if the person be not a member of the profession, although supposed to be so by the client; . . . . or if he was a mere scrivener, although of the legal profession."

The first and third specifications of error ar  sustained, and,

Statement of Facts.

as we discover no merit in the remaining specifications, they are dismissed.

> Judgment reversed, and venire facias de novo awarded.