COMMERCIAL UNION INSURANCE COMPANY, LTD. AND OTHERS v. J. A. CONNOLLY.[1]

March 6, 1931.

No. 28,269.

[1]Reported in 235 N. W. 634.

2

*Gustavus Loevinger* and *Francis M. Smith,* for appellant.
*Boyesen, Otis & Faricy,* for respondents.

HOLT, J.

The action was in replevin for six liberty bonds each of the par value of $5,000, sent by registered mail by appellant on May 15, 1928, to the Federal Reserve Bank of Minneapolis with a request that a draft therefor be forwarded to him. It appears that on February 11, 1921, these and other liberty bonds were delivered to the United States post office department of Cleveland, Ohio, by the Federal Reserve Bank of Cleveland to be transferred by registered mail to the Dime Savings Bank Company of Toledo, Ohio, which latter bank was the owner thereof. Plaintiffs herein had insured said Federal Reserve Bank of Cleveland against loss of said bonds in transit. The bonds were by robbery forcibly taken from the agents of the United States while being transported and were never received by the Dime Savings Bank Company. Plaintiffs made good the loss and by assignments acquired ownership to the

stolen bonds. After diligent and continuous search plaintiffs finally. in June, 1928, located the bonds here involved in the possession of the Federal Reserve Bank of Minneapolis, and upon its refusal to deliver possession this action in replevin was brought against the bank.

Thereupon the bank petitioned the court to be permitted to deposit the bonds with the court and to have J. A. Connolly substituted as defendant and interplead in the action. The petition was granted. Connolly answered and alleged ownership of the bonds and that he was a good faith purchaser of the same for value and in due course. The action was tried to a jury. Both parties moved for a directed verdict. The motions were denied. The verdict was for plaintiffs. For no apparent reason the court made findings of fact incorporating the verdict and as conclusion of law found that plaintiffs were the owners of the bonds at the commencement of the action and were entitled to judgment for the same and possession thereof and judgment against Connolly for costs and disbursements. He moved for judgment non obstante, for vacation of the findings, and for a new trial. The several motions were denied. J. A. Connolly appeals.

There are 45 assignments of error, only a few of which need be considered or discussed in order to dispose of the appeal. Appellant concedes that plaintiffs' evidence conclusively proved that the bonds were among those stolen and carried away in the mail robbery referred to. Nor do we think the transfer of the legal title of the then owner to plaintiffs is or can be questioned.

By answer, by objection to testimony, and by motions appellant challenged the jurisdiction of the court. It is contended the bonds belonged to the United States; that they were in the custody of the Federal Reserve Bank of Minneapolis as the fiscal agent of the United States and therefore immune to seizure by process of courts —that the action is in fact against the United States, not suable in the courts of a state.

We cannot discover any reasonable ground upon which a defense of that sort can be made, after appellant appeared generally and

4

by his answer alleged ownership and right of possession to the bonds and by leave of court amended his answer so as to plead "that he purchased said bonds on or about the 5th day of July, 1927, from one J. Barrett, at the city of St. Paul, Minnesota, in good faith, for value, prior to maturity, in the ordinary course of business and without any notice of any alleged defects in the title of said bonds, and that he paid therefor the sum of thirty thousand dollars." Moreover, the Federal Reserve Bank of Minneapolis did not claim any interest in the bonds either individually or as fiscal agent of the United States, but voluntarily surrendered the bonds to the court and asked to be dismissed and have appellant substituted as defendant. When the demand for the bonds was made of the Federal Reserve Bank it held the bonds as the supposed property of appellant. The United States had not paid or redeemed them, and they were not the property of the United States. The ownership and right of possession was then either in plaintiffs or appellant. No one else claimed any interest in them. It clearly appears that the agents and officials of the United States did not consider that the government had any title or right of possession to the bonds.

On the legal proposition that the bonds were not beyond the reach of process of the courts of this state though in possession of a fiscal agent of the United States for redemption but not redeemed, we need only cite U. S. v. Lee, 106 U. S. 196, 1 S. Ct. 240, 251, 27 L. ed. 171; Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 40 L. ed. 599. In the Lee case, 106 U. S. 208, it was said that when the citizen, "in one of the courts of competent jurisdiction, has established his right of property, there is no reason why deference to any person, natural or artificial, not even the United States, should prevent him from using the means which the law gives him for the protection and enforcement of that right." And it may be added that no case has come to our attention where one not an agent or one not an officer of the United States was heard or permitted to interpose the defense that the action is directly or indirectly against the United States.

Appellant pleaded the statute of limitations (G. S. 1923 [2 Mason, 1927] § 9191) as a bar. Title to stolen property does not pass to the thief; it remains in the one who owned it when stolen. In analogy to the acquisition of title to real property by adverse possession, courts have held that title to stolen personal property may be acquired by open, public, and notorious possession under claim of right during the statutory period of limitations—six years in this state. The court in Lightfoot v. Davis, 198 N. Y. 261, 91 N. E. 582, 584, 29 L.R.A.(N.S.) 119, 139 A. S. R. 817, 19 Ann. Cas. 747, so holds in a very persuasive opinion. Chief Justice Cullen therein stated [198 N. Y. 267]:

"Where a person obtains possession of property secretly by a common-law larceny and conceals that possession, no lapse of time should confer title on the thief. The contrary doctrine seems to me shocking both in morals and to common sense."

The application of the statute of limitations in actions of replevin of stolen property has been before the courts of Oklahoma in several cases. The language in Gatlin v. Vaut, 6 Ind. Ter. 254, 259 (91 S. W. 38, 40) was:

"We therefore hold that the statute of limitations as to personal property in the hands of a thief who has removed it from the vicinity of the owner or secreted it from him does not begin to run until he returns the property to that vicinity, or openly and notoriously holds it, so that the owner may have a reasonable opportunity of knowing its whereabouts and of asserting his title. * * * If the thief, after having concealed the property, has done nothing in relation to it to start the statute in his favor, his grantee cannot tack the thief's possession, or any part of it, to fill out his unexpired time."

This decision has been approved and applied in cases cited and reviewed in Chilton v. Carpenter, 78 Okl. 210, 189 P. 747. Concealment of a fraud or wrong does not ordinarily set the statute of limitations running until discovery of the fraud. A case of robbery and theft is an aggravated case of fraud or wrong where every

effort is made to conceal the property taken and to hide the identity of the thief or the one in whose possession the property is placed. And in such cases the courts hold the statute does not start running until discovery so that legal redress may be possible against the wrongdoer. R. S. § 5057, reads:

"No suit; either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

There is no exception as to concealment of a fraud. But the courts have held that in a case predicated on fraud the bar of the statute does not begin to run until discovery of the fraud. Bailey v. Glover, 21 Wall. 342, 22 L. ed. 636; Traer v. Clews, 115 U. S. 528, 6 S. Ct. 155, 29 L. ed. 467. See also Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633.

In the case at bar it conclusively appears that plaintiffs and government secret service men made persistent and diligent efforts to discover the bonds and those in possession of them without avail, until information was obtained that appellant had deposited them, as above stated, with the Federal Reserve Bank of Minneapolis. Appellant adduced no testimony except that of one McCarthy tending to prove open possession of the bonds earlier than July 5, 1927, when the alleged sale by J. Barrett to appellant took place. Clearly the statute of limitations did not bar this action.

The bonds being stolen, the title of the thief to them and the title of any one claiming through the thief was defective. But since they were payable to bearer, appellant could have prevailed had he proved himself a holder in due course as defined by G. S. 1923 (2 Mason, 1927) § 7095 (L. 1913, p. 373, c. 272, § 52, uniform negotiable instruments act). On this issue the burden of proof was upon appellant, after plaintiffs had established the loss of the bonds by theft. He so signally failed in this respect that plaintiffs con-

tend they were entitled to a directed verdict. Appellant did not take the witness stand, nor did he attend the trial. Two of the essentials to constitute one a holder in due course is his procuring them in good faith and his want of notice of defect in the title of the one negotiating the negotiable instrument. No one could testify to appellant's good faith or want of notice of defective title but himself. McCarthy, but slightly acquainted with appellant and Barrett and a casual observer of their alleged bond transaction, possessed no knowledge of the vital facts mentioned, the same being within the sole knowledge of appellant. We have no hesitation in holding that appellant failed to prove that he was a holder of the bonds in due course; and the title thereof being defective in the hands of Barrett or in those from whomsoever appellant may have got them, plaintiffs were as a matter of law entitled to a directed verdict. That being so, no error in the charge or in the rulings on evidence upon matters not affecting the issue of a holder in due course of the bonds furnishes grounds for a new trial.

As stated, appellant offered only McCarthy on that issue, and every answer he made to the questions asked by appellant's counsel was received. But over appellant's objection plaintiffs in rebuttal proved by two witnesses in the secret service of the government that in May, 1928, appellant admitted to them facts discrediting or conflicting with McCarthy's version of the transaction of July 5, 1927. The ground of the objection was that information thus obtained was within the line of their duty and only to be communicated to their superior officers. Certainly there was no violation of G. S. 1923 (2 Mason, 1927) § 9814, which provides:

"A public officer shall not be allowed to disclose communications made to him in official confidence when the public interest would suffer by the disclosure."

It is idle to claim that public interests will suffer by a disclosure of admissions by a litigant that facts testified to by his witness were untrue. The secret service men were not compelled to testify. Appellant had no business with them officially. There is no pretense that he made the statements confidentially. State v. McClen-

don, 172 Minn. 106, 214 N. W. 782; In re Comingore (D. C.) 96 F. 552; In re Lamberton (D. C.) 124 F. 446; Nye v. Daniels, 75 Vt. 81, 53 A. 150, are not in point. But even accepting McCarthy's incredible story as true, and eliminating the impeaching testimony of the witnesses just referred to, we think appellant, by not testifying to his good faith and want of notice of defect in the title to the bonds, failed to prove himself a holder in due course.

To make ineffective plaintiffs' contention that no errors should reverse because they were entitled to a directed verdict, appellant cites cases holding that judgment notwithstanding the verdict should not be granted in favor of a party unless it is clear that no evidence is available which on another trial might authorize a verdict for the opposite party. 3 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5082; Herman v. Wabash Ry. Co. 153 Minn. 195, 189 N. W. 943; Farmers State Bank v. Merchants & M. State Bank, 164 Minn. 300, 204 N. W. 965; Schendel v. C. M. & St. P. Ry. Co. 168 Minn. 152, 210 N. W. 70; Opperud v. Byram, 173 Minn. 378, 217 N. W. 379. But appellant overlooks the fact that in the case at bar a verdict has been rendered and has been approved by the trial court, which we consider respondents were entitled to as a matter of law. All the evidence appellant saw fit to offer was received. It is possible that had he himself testified a different result would have been attained. But he knew what he could testify to when the trial took place, and hence there is no newly discovered evidence in this that would warrant another trial, nor was the motion for a new trial based on that ground.

Upon the verdict rendered plaintiffs were entitled to judgment; and the findings, being consistent with the verdict, may be regarded as surplusage and of no more consequence to the parties than the verdict.

The order denying a new trial is affirmed.