STATE v. GEORGE LENDER.

124 N. W. (2d) 355.

November 1, 1963—No. 38,777.

*James B. Lund,* for appellant.

*George M. Scott,* County Attorney, and *William S. Posten* and *Douglas X. Juneau,* Assistant County Attorneys, for respondent.

ROGOSHESKE, JUSTICE.

This is a statutory proceeding to determine the paternity of an illegitimate female child. Ellen O'Connor, age 18 and unmarried, gave birth to the child on December 23, 1961, in Minneapolis. By a complaint made before the municipal court, she accused the defendant, George Lender, of being the father. After a verdict against him, defendant appeals from an order denying his alternative motion for judgment or a new trial.

A review of the record satisfies us that the evidence is clearly sufficient to justify the verdict and that defendant's numerous assignments of error would provide no basis for reversal of the trial court were it not for its error in upholding the claims of privilege respecting certain records sought to be examined by defendant during the trial.

The records in question were those of the Hennepin County Welfare Department, a government agency; the Legal Aid Society of Minneapo-

lis; and the Catholic Welfare Association of Minneapolis. There is no evidence describing the nature and activities of the last two agencies, but we assume that both are private organizations dedicated to rendering aid and advice to unwed mothers and others.

Correctly viewing the proceeding as a civil action,[1] both the state and defendant employed pretrial discovery procedures pursuant to the Rules of Civil Procedure. The state served interrogatories which, after a hearing on objections interposed to certain questions propounded, defendant duly answered. Defendant secured a discovery deposition upon oral examination of the doctor who examined the mother prior to the birth of the child. Although the doctor claimed privilege upon his first appearance, the defendant obtained an order directing him to answer questions concerning "the fact and probable date of inception of the pregnancy of his patient without her consent" as required by Minn. St. 257.30.[2]

Defendant did not attempt, under the rules of discovery, to examine the records of the three welfare agencies before trial. At trial, the records of the Hennepin County Welfare Department and the officers in charge of the two private agencies were subpoenaed as part of his case in chief. His purpose for doing so is not revealed, but presumably it was in the hope that he could attack the credibility of the complainant on the ground that she had made prior inconsistent accusations.

In the case of the Hennepin County Welfare Department, Joseph D. Bianchi, a caseworker, appeared and testified. After the agency's records were produced, identified, and marked as an exhibit, defendant's counsel asked to examine them. The trial court sustained the

---

[1] State v. Jeffrey, 188 Minn. 476, 247 N. W. 692; State v. Sax, 231 Minn. 1, 42 N. W. (2d) 680, 18 A. L. R. (2d) 929.

[2] When the doctor appeared in response to the notice of taking his deposition, the state made no appearance and the doctor refused to answer questions on the claim that he was advised that the information requested was privileged. The taking was adjourned and a motion to compel answers was made, and after hearing, the doctor was directed to answer the questions authorized by Minn. St. 257.30. Thereafter, the doctor again refused to answer the questions until defendant paid him a professional-witness fee of $100, which the state advised he had a right to demand.

state's objection that the records were confidential and privileged, and inspection of these records was denied.

In the case of the Legal Aid Society, Harlan E. Smith, the executive secretary and chief legal counsel of the society, was subpoenaed. He testified that he was a recent graduate from law school and that while he was employed by the society from September 1, 1961, and did in fact confer with the mother on September 8, 1961, he was not formally admitted to practice law until October 6, 1961. In his testimony he produced records which defendant's counsel requested to examine. Mr. Smith refused to surrender possession of the records and the court sustained the refusal, explaining that although Mr. Smith was not yet admitted to practice law he was consulted in a "legal capacity" and the lawyer-client privilege prevented inspection.

In the case of the Catholic Welfare Association of Minneapolis, Father Thomas Meagher, the director, appeared in response to defendant's subpoena and produced records which concerned conferences between the mother and an employee who worked under the direction of the witness. After the records were marked as an exhibit, the court upheld Father Meagher's request that the records of his agency be accorded the same privilege as the records of the public welfare agency. After sustaining this claim of privilege, the court explained to the jury that, where the conference was with one working under the direction of a priest, the scope of the privilege between priest and penitent prevented disclosure.

This appeal is concerned with certain rules of privilege which are recognized by our statutes and prevent disclosure of confidential communications between attorney and client (Minn. St. 595.02[2]), priest and person seeking spiritual advice (§ 595.02[3]), and communications to a public official when the public interest would suffer by the disclosure (§ 595.02[5]). Application of these rules depends upon proof of the existence of certain specified conditions. Whether a communication, oral or recorded, is privileged is a question of fact.[3] Unless a document discloses on its face that it is privileged, a mere

---

[3]Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535; State v. Anderson, 247 Minn. 469, 78 N. W. (2d) 320.

assertion that a communication is confidential and privileged in not enough. A proper showing must be made because the objective of a rule of privilege is to suppress evidence which otherwise may be not only admissible but crucial to a claim or defense. Thus, rules of privilege are applied more deliberately than other evidentiary rules which exclude available evidence that is unreliable, misleading, or prejudicial. The burden rests upon the party claiming the privilege to present facts which establish that he has a right to assert the claim and that the communication falls within the scope of a privilege that protects a particular interest or relationship.[4] It is the trial court's function to decide these preliminary questions of fact and to determine whether the conditions upon which the application of the particular privilege depends have been fulfilled.[5]

With respect to all of the privileges asserted, this would require proof that the communication was in fact confidential, in the sense that the conferences had with the mother were private under circumstances indicating an intention that what was related would be kept secret.[6] Furthermore, it is essential to show, with respect to the priest-penitent and attorney-client privileges, that the conference was with a priest or lawyer, and that the consultation was for the purpose of seeking spiritual or professional advice.[7] Under § 595.02(3) the priest-penitent privilege specifically requires either a penitential confession or a communication by one "seeking religious or spiritual advice, aid, or comfort."

The language of § 595.02(5) expresses the conditions necessary for its application. It provides:

"A public officer shall not be allowed to disclose communications

---

[4]Brown v. St. Paul City Ry. Co. *supra*; State v. Anderson, *supra*.

[5]Brown v. St. Paul City Ry. Co. *supra*. See, 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2322; McCormick, Evidence, § 53; National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence, Rule 8; A. L. I., Model Code of Evidence, Rule 11.

[6]See, State v. Anderson, *supra*; 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2285; McCormick, Evidence, § 95.

[7]See, McCormick, Evidence, §§ 81, 92.

made to him in official confidence when the public interest would suffer by the disclosure."

While the statute uses broad language, and its application to a paternity proceeding may be questionable, the provisions seem to clearly declare that the public official is the holder of the privilege. When privilege is claimed under this statute, there must be proof not only of a confidential communication but also that disclosure would seriously injure the public interest.

In the light of these principles we need to decide only the narrow question of whether, upon this record, the parties claiming privilege established a sufficient foundation in each instance to entitle them to the privilege claimed. From the record it is manifest that the conditions necessary to any of the privileges asserted were not fulfilled.

The records of the Catholic Welfare Association of Minneapolis were not alleged to contain either a confession or a communication with a priest. On the contrary, the testimony reveals only a conference with an employee of that agency by the complainant who may, or may not, have been a member of the religious denomination served by that agency. No circumstances tending to support confidentiality are shown, and complainant, the owner of the privilege, did not assert it.

The court denied inspection of the records of the Legal Aid Society on the ground that they consisted of conferences between an attorney and his client. A claim of privilege was not asserted by complainant or on her behalf but, rather, it was asserted by the officer of the society himself. We believe the court erroneously assumed the existence of facts essential to applying § 595.02(2). A fair reading of the testimony reveals no basis upon which to conclude that the complainant made confidential disclosures to Mr. Smith under a reasonable belief that he was authorized to practice law and for the purpose of obtaining legal advice, or that Mr. Smith in fact undertook to give her such advice. Furthermore, even though we might speculate that those were the facts, we are not prepared to extend the scope of the attorney-client privilege to prevent disclosure of communications made to a law graduate awaiting his formal admission to practice. There is textual authority to grant the attorney-client privilege to one who

is not admitted to practice;[8] but we have found no case where such was done except where the person posing as a lawyer deliberately deceived the client seeking legal advice.[9] Absent a showing of such deception by word, conduct, or circumstances, it would seem unreasonable to grant the privilege to a person who makes no inquiry concerning whether he is consulting with a lawyer or a layman.

In a broad sense it could be argued that § 595.02(5) provides a basis for granting secrecy to the records of a public welfare agency. But here, it is not possible to decide whether the statute was intended to apply to such records because the minimum conditions essential to its application are not established. The testimony provides no basis to find, directly or by reasonable inference, that the communication was confidential. More strikingly, there is wholly absent any attempt to show that "the public interest would suffer by the disclosure." There was a mere assertion of confidentiality and privilege by counsel, apparently on behalf of complainant rather than the public officer. Where the conditions necessary to apply the statute are lacking, it cannot be used to prevent disclosure.[10]

Assuming, without deciding, that the legislature intended to grant immunity to the records of a public welfare agency in certain situations, we are unable to conceive how it would be possible to establish that a disclosure would be detrimental to the public interest in a case of this kind. If we assume that these records did contain statements

---

[8]See, McCormick, Evidence, § 92; 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2302; A. L. I., Model Code of Evidence, Rule 209; National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence, Rule 26.

[9]People v. Barker, 60 Mich. 277, 27 N. W. 539; see, State v. Russell, 83 Wis. 330, 53 N. W. 441.

For cases that have refused to extend the attorney-client privilege to a law student, see Wartell v. Novograd, 48 R. I. 296, 137 A. 776; Barnes v. Harris, 61 Mass. (7 Cush.) 576; Schubkagel v. Dierstein, 131 Pa. 46, 18 A. 1059, 6 L.R.A. 481; Holman v. Kimball, 22 Vt. 555.

[10]See, Cole v. Andrews, 74 Minn. 93, 76 N. W. 962; Commercial Union Ins. Co. Ltd. v. Connolly, 183 Minn. 1, 235 N. W. 634; Rockwood v. Pierce, 235 Minn. 519, 51 N. W. (2d) 670.

inconsistent with the complainant's testimony that defendant was the father, the public interest would seem to require that she be confronted with those statements. In a paternity proceeding the overriding public interest in adjudicating the parentage of children born out of wedlock demands that all available sources for ascertaining the true facts remain open both to the state and to the alleged father. The facts relevant to the disputed issues are so peculiarly within the personal knowlege of the mother and the alleged father that resolution of those issues depends almost entirely upon the credibility of their testimony. This being the case, the public interest would be advanced rather than injured by the disclosure. There may be instances where disclosure would be detrimental to an interest peculiarly public but, absent such a showing, the statute ought not to be applied to prevent testing the credibility of complainant or as a blockade to any source of truth bearing on the fact issues presented.

We hold that absent proof of fulfillment of the conditions necessary for applying rules of privilege, claims asserting them must be denied.

Reversed and a new trial granted.