**STATE of Minnesota, Respondent,**

v.

**Jeremiah Robert STEVENS, Appellant.**

No. C1–97–1828.

Court of Appeals of Minnesota.

June 23, 1998.

Review Denied Aug. 18, 1998.

John G. Westrick, G. John Veith, Westrick & McDowall–Nix, St. Paul, for appellant.

Hubert H. Humphrey III, Attorney General, St. Paul; Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson, Asst. County Attorney, Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and SHORT and WILLIS, JJ.

## OPINION

HUSPENI, Judge.

Appellant Jeremiah Robert Stevens challenges his convictions for drive-by shooting and aiding and abetting second-degree assault, arguing that there was insufficient evidence to support the convictions and that the trial court erred in admitting certain evidence. Because we conclude that sufficient evidence exists to support the conviction and that the trial court did not err in admitting evidence, we affirm.

## FACTS

On February 19, 1997, Michael Stevens, Jr. (victim) was driving his car in Minneapolis when a vehicle occupied by appellant Jeremiah Robert Stevens and Gregory Ives began following him. Knowing that appellant and Ives were angry with him because he sold a stereo that they had stolen, the victim attempted to elude them. A chase ensued that reached speeds of 85 miles per hour. When the victim reached the corner of Lincoln and 27th Street Northeast, he turned right suddenly and heard several gunshots behind him. During the chase, the victim witnessed Ives hanging out the window of the vehicle and saw him reach back inside shortly before he heard the gunshots. Eight shell casings were later recovered from the scene.

There was no testimony from any eye witness to the firing of the shots, but when police searched appellant's home, they discovered a .40 caliber handgun that matched the shell casings found at the scene; appellant admitted that he was holding the gun for Ives. The victim testified that he knew that Ives frequently carried a high-caliber weapon, and appellant testified that he had seen

Ives with the gun between ten and fifteen times.

Appellant was charged with drive-by shooting in violation of Minn.Stat. § 609.66, subd. 1e(a) (1996), and assault in the second degree in violation of Minn.Stat. §§ 609.222, subd. 1e(a) (1996) and 609.05 (1996).

A jury trial was held in July 1997. As an alibi, appellant asserted that he could not have committed the crime because he was shopping for auto parts with his mother at the time. Appellant's mother was sequestered during his testimony. Appellant testified that at the time he did not have a license, that he had not driven his mother's Neon before he had a license, that his mother drove him in her Neon to a Big Wheel Rossi store by going to Silver Lake Road and then took Silver Lake Road to Mississippi, that after going to a Carquest store they took University Avenue to Highway 10 to get home, and that they then went back to Carquest and then to a Bumper-to-Bumper store on Highway 10. Shortly after this testimony, there was a break in the proceedings.

During the break, appellant wrote a note to his mother. The note said:

> I never drove the Neon until I got my license. We went on University to 10 every time except on the way to BWR then we went Silver Lake to Mississippi. Remember I love you no matter what the outcome.

The note was delivered by defense counsel's law clerk to appellant's grandmother, who passed it to appellant's mother. It was intercepted and admitted into evidence.

On cross-examination, appellant testified as to the timing of his shopping. On rebuttal, and over appellant's objections, respondent introduced the testimony of an auto parts store employee and a police investigator that refuted appellant's alibi.

The jury convicted appellant on both counts. Appellant moved for judgment notwithstanding the verdict or a new trial. The trial court denied the motions and sentenced appellant to 36 months in prison on the charge of drive-by shooting.[1]

1. Appellant was not sentenced on the second-

## ISSUES

1. Did sufficient evidence exist to support appellant's convictions:

a. For drive-by shooting in violation of Minn.Stat. § 609.66, subd. 1e(a) (1996)?

b. For second-degree assault in violation of Minn.Stat. § 609.05 (1996)?

2. Did the trial court abuse its discretion in admitting:

a. The note from appellant to his mother?

b. The rebuttal testimony?

## ANALYSIS

### 1. Sufficiency of the evidence

Where there is a challenge to the sufficiency of the evidence, our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). A conviction based on circumstantial evidence will be upheld if the "reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." *State v. Anderson*, 379 N.W.2d 70, 75 (Minn.1985) (citations omitted).

#### a. Drive-by shooting

Minn.Stat. § 609.66, subd. 1e(a), states:

> Whoever, while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward a person, another motor vehicle, or a building is guilty of a felony * * *.

Appellant argues that there was insufficient evidence to prove that the gunshots were fired "at or toward" the victim as required by the statute. In support of his argument, appellant notes that no third party witnessed the discharging of the gun and that respondent's forensic expert testified there was no way to determine in what di-

degree assault charge.

rection the gun had been fired. We conclude that the evidence is sufficient to support conviction.

Testimony at trial indicated that appellant and Ives pursued the victim at high speed because they were angry with him, that Ives often carried a high-caliber handgun, and that Ives's gun, found in appellant's home, matched the shell casings found at the scene. In addition, the victim saw Ives lean out the window of the car and then pull something out shortly before he heard gunshots. The circumstantial evidence points to the conclusion that the eight shots fired during the high-speed chase were fired "at or toward" the victim.

Even if we were to assume that the shots were not fired directly "at" the victim, we believe that the words "at" and "toward" in Minn.Stat. § 609.66 were intended by the legislature to encompass separate things. Where "at" seems to require something direct, "toward" only requires "in the direction of." *The American Heritage Dictionary* 1894 (3rd ed.1992). In addition, we note that the .40 caliber weapon used has a range of over one mile and that the statute only requires that shots be fired "at or toward a person, another motor vehicle, or a building." Minn.Stat. § 609.66. As the district court noted in the probable cause hearing:

> [O]ne cannot fire a powerful pistol into the air eight times on 27th and Lincoln Northeast in Minneapolis at 3:30 in the afternoon without expecting to hit at least one vehicle parked or moving. There is rush hour traffic on nearby Johnson street as well as two blocks south on Lowry Avenue northeast, not to mention cars parked and driving in a fully developed residential neighborhood.

The district court's observations are credible. Firing a weapon with a range of one mile from a moving vehicle while chasing someone is sufficient evidence to conclude that the weapon was fired "at or toward" a person, vehicle, or building in violation of Minn.Stat. § 609.66.

**b. Aiding and abetting second-degree assault**

■ The aiding and abetting statute states:

> A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

Minn.Stat. § 609.05, subd. 1 (1996). Appellant argues that because there was no proof that he knew Ives was in possession of a weapon, respondent failed to prove the intent element of aiding and abetting second-degree assault. In addition, appellant argues that even if he knew about the weapon, he could not have done anything to stop Ives because the ballistic expert testified that all of the shots could have been fired in 2.5 seconds. *See State v. Ostrem,* 535 N.W.2d 916, 924 (Minn.1995) ("Mere presence at the scene of a crime does not alone prove that a person aided or abetted, because inaction, knowledge, or passive acquiescence does not rise to the level of criminal culpability.").

The evidence presented at trial, however, was sufficient to support appellant's conviction of second-degree assault. Appellant drove his mother's vehicle at speeds reaching 85 miles per hour in the effort to reach the victim. The victim testified that he was unable to elude appellant. In addition, appellant testified that Ives owned the gun found at appellant's home and that appellant had seen Ives with it ten to fifteen times. Lastly, the fact that Ives was hanging out the window of appellant's vehicle in February traveling 85 miles per hour indicates that appellant was not a surprised bystander when Ives reached back into the vehicle, grabbed his gun, and began firing. Sufficient evidence existed to support appellant's conviction for aiding and abetting second-degree assault.

**2. Admissibility of evidence**

■ The question of whether to admit or exclude evidence rests within the broad discretion of the trial court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion. Entitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error.

*Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990) (citation omitted).

### a. Note from appellant to his mother

■ During a conference in the judge's chambers, appellant wrote a note to his mother that was passed from the defense counsel's law clerk to appellant's grandmother to appellant's mother, who was sequestered outside the courtroom. The note told appellant's mother what appellant had testified to concerning their shopping trip, so that if she were called to testify she could corroborate it.[2] Appellant now argues that the court abused its discretion in admitting the note because it was a protected communication between a parent and child. We disagree and cannot read into the privilege protection broad enough to encompass this communication.

■ Minn.Stat. § 595.02, subd. 1(j) (1996), provides that:

A parent or the parent's minor child may not be examined as to any communication made in confidence by the minor to the minor's parent. A communication is confidential if made out of the presence of persons not members of the child's immediate family living in the same household.

Privileges are to be applied more deliberately than other evidentiary rules because they suppress otherwise admissible evidence. *State v. Lender,* 266 Minn. 561, 564, 124 N.W.2d 355, 358 (1963).

Appellant relies on the legislative history of Minn.Stat. § 595.02, subd. 1(j), to support his contention that the parent-child privilege was created to permit and encourage children to confide in their parents and seek their advice in times of trouble. While this may be the policy behind the statute, the content of appellant's note in this case indicates that he was telling his mother what he testified to on the stand; he was not seeking her advice and counsel. In addition, even if

appellant's words could be construed as seeking advice, his communication was clearly in violation of the court's sequestration order.[3]

The public policy preserving confidentiality does not permit appellant to coach his mother's testimony or circumvent the trial court's order. The court did not abuse its discretion in admitting the note.

### b. Admission of rebuttal testimony

■ "In general, rebuttal evidence consists of that which explains, contradicts, or refutes the defendant's evidence." *State v. Swanson,* 498 N.W.2d 435, 440 (Minn.1993). What constitutes rebuttal evidence rests with the discretion of the court. *Id.*

At trial, appellant asserted that he was shopping for auto parts with his mother at the time of the shooting and could not have been present when the shots were fired. Appellant did not present a detailed time description of his whereabouts, but merely argued that he was with his mother between 1:30 p.m. and 3:30 p.m. on the day of the shooting.

In its case in chief, respondent introduced a receipt found at appellant's home from the Bumper–to–Bumper Auto Parts store. Later, in rebuttal to appellant's testimony, respondent introduced testimony from Monica Long, an employee of Bumper–to–Bumper Auto Parts, and James Martin, a Hennepin County investigator. Long testified that Bumper–to–Bumper's cash register clock was set ten minutes fast, which would affect any receipt from the store. Martin then testified that it took 13 to 16 minutes to drive from the scene of the crime to the auto parts store and that appellant could have been at the scene and still have made the purchase indicated on the Bumper–to–Bumper receipt. Appellant argues that because he did not rely specifically on any place and time to support his alibi, testimony regarding specific times

---

2. Appellant's mother did not testify after receiving the note.

3. Because appellant passed his note through the defense counsel's law clerk and appellant's grandmother before reaching appellant's mother, there is also a serious question as to whether the communication was ever intended to be privi-

leged. *See id.* at 563–64, 124 N.W.2d at 358 (interpreting the privileges in Minn.Stat. § 595.02, subds. 2, 3, and 5, the court held "[u]nless a document discloses on its face that it is privileged, a mere assertion that a communication is confidential and privileged is not enough.").

was outside the scope of rebuttal. He does not cite any case law to support this proposition.

Respondent's introduction of testimony showing that appellant could have been at the auto parts store and the scene of the crime was admissible as rebuttal testimony because it refuted appellant's alibi. *See id.* It was not improper simply because it pinpointed the exact time that appellant made his purchases. The evidence was properly admitted rebuttal testimony.

### DECISION

Because appellant pursued the victim in his mother's vehicle at speeds reaching 85 miles per hour, was angry with the victim for selling a stolen stereo, knew that his passenger carried high-caliber weapons, witnessed his passenger hang out the window of the vehicle at high rates of speed in February, and because a .40 caliber handgun has a range of over one mile, sufficient evidence existed to prove that the weapon was fired "at or toward a person, another motor vehicle, or a building" in violation of Minn.Stat. § 609.66, subd. 1e(a), and that appellant was guilty of aiding and abetting second-degree assault in violation of Minn.Stat. § 609.05.

In addition, the court did not abuse its discretion in admitting a note passed from appellant to his mother in violation of a sequestration order or in admitting as rebuttal evidence testimony that refuted appellant's alibi.

**Affirmed.**