STATE v. ALVIN RAY TURNBULL.

127 N. W. (2d) 157.

March 20, 1964—No. 38,610.

*George M. Waldrup,* for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Albert E. Ranum,* Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

On September 21, 1961, defendant was found guilty of the crime of indecent assault under Minn. St. 617.08[1] on an information dated June 16, 1961, issued by the county attorney of Ramsey County which charged that—

"* * * on the 4th day of June, in Year 1961, at said County, Alvin Ray Turnbull [defendant] then and there being, did wrongfully, unlawfully, and feloniously take indecent liberties with and on the person of * * * a female under the age of sixteen years, to-wit: of the age of nine years; * * * contrary to the form of the statute * * * the

---

[1]Minn. St. 617.08 provides: "Every person who shall take any indecent liberties with or on * * * the person of any female under the age of 16 years * * * without regard to whether * * * she shall consent to the same or not * * * shall be guilty of a felony."

same being Section M. S. A. 617.08 said acts constituting INDECENT ASSAULT * * *."[2]

On appeal from the judgment of conviction, he contends that the court erred (1) in restricting his counsel's cross-examination of the complaining witness; (2) in allowing the complaining witness and her mother to relate as part of the res gestae their conversation of June 4, 1961, relating to the incident for which defendant was convicted and also to a similar incident alleged to have occurred on the preceding day; (3) in receiving rebuttal testimony of the father of the complaining witness, which was objected to on the grounds that it was repetitious, cumulative, and inflammatory; (4) in failing to grant defendant's motion for a mistrial because in cross-examination defendant was asked whether he had "ever engaged in this type of activity with any minor children"; and (5) in not ordering a mistrial because the assistant county attorney in his final argument to the jury stated:

"Now this is a heinous crime and I will tell you why. Because so often when you have crimes concerning sex and an adult molester, the adult will do away with the child to cover his tracks. It didn't happen in this case—"

The indecent liberties for which defendant was convicted were alleged to have taken place on June 4, 1961, at about 3:45 p. m. in a gasoline station in St. Paul where defendant was employed. There was testimony by the complaining witness, a 9-year-old female child, as to this incident and as to a similar incident with defendant, which she claimed had occurred on June 3, 1961, at about 2:15 p. m. The child made no complaint or report to her parents as to the June 3 incident on the day of its occurrence. However, when she returned home shortly after the June 4 incident was alleged to have occurred, she related it to her mother and also told of the previous day's occurrence. The court over defendant's objection allowed the mother of the complaining witness to testify as to this conversation on the ground that it was part of the res gestae and corroborative of the child's testimony.

---

[2]The name of the child was set forth in the information.

Shortly after the conversation between the child and her mother on Sunday, June 4, the child's father returned home, and when he was advised as to what had occurred, he took the child with him to the gasoline station where they confronted defendant. The father testified as follows with respect to this meeting:

"A   I asked the man there if he had molested my little girl.

"Q   What did he reply?

"A   He said 'If she said so I must have.'

"Q   Did he say anything else to you at this time?

"A   Yes.

"Q   What did he say?

"A   He said 'I had trouble with kids before.'

\*   \*   \*   \*   \*

"A   He said 'Did you call the cops yet?' and I said 'No, but I am going to.' Then is when I left."

In his testimony defendant gave the following version of this conversation:

"Q   Now did the gentleman who has testified earlier, [the father], did he come to the station on Sunday, June 4th?

"A   Yes.

"Q   About what time was that?

"A   Approximately ten minutes to six. \* \* \*

"Q   What did he say to you?

"A   He says 'You been fooling around with my little daughter.' "

Defendant denied that he had molested the child on either of the occasions described; and denied that he had made the statements attributed to him by the father as above set forth. He testified that the father had not used the word "molested" but had asked him if he had been "fooling around with my little daughter" and that he had replied in the affirmative because he had reference merely to playing with the child as he would any small child. After the defendant rested the state recalled the child's father for further testimony. Because of the conflict between the testimony of defendant and that of the child's father as above described, the state further questioned the father as follows:

"* * * At the time on Sunday, June 4th when you went to the Standard Station * * * you talked with the defendant * * * did you in your statement to him ask him whether he had been fooling around or molesting your daughter?

"Mr. Moore [counsel for defendant]: That is objected to as improper rebuttal. The man testified on direct as to what was said. * * *

\* \* \* \* \*

"Mr. Ranum [counsel for the state]: The answer of the defendant differed.

"The Court: Then I think it is proper rebuttal. The objection is overruled.

"A   I said 'molesting.'

"Q   After you made this statement * * * did he reply to you?

"A   Yes.

\* \* \* \* \*

"Q   What was his reply?

"A   He said 'If she says so I must have been.'

"Mr. Moore: May the record show a continuing objection to this line of questioning, on the grounds it is improper rebuttal? It was covered explicitly on direct * * *.

"The Court: You may have a continuing objection.

"Q   As to the matter of whether or not the police had been notified did you have a conversation with Mr. Turnbull concerning this?

"A   Yes.

"Q   And what did you say to him?

"A   He asked me if I had called the cops yet and I said no, I had not, but I was going to.

"Q   Were you angry at the time you made these statements to Mr. Turnbull?

"A   Yes."

During the trial in the cross-examination of the complaining witness, the following occurred:

"Q   After you had lunch your father took you down to the station?

"A   Yes.

"Q   And that would maybe be four-thirty, is that about right?

"Mr. Ranum: I object to the manner of cross-examining this witness. He can put the questions to her.

"The Court: I think it would be fair to ask her rather than suggesting to her.

"Mr. Moore: May I note an exception to that?

"The Court: Yes.

\*   \*   \*   \*   \*

"Q   You got home at three-thirty and had lunch?

"A   Yes.

"Q   Lunch took how long?

"A   I don't know.

"Q   Would it be fair to say that lunch took a half hour to an hour?

"Mr. Ranum: The same objection.

"The Court: I will overrule the objection to that question.

"Q   Would it be fair to say that lunch took a half hour to an hour?

"A   No. It took about ten or fifteen minutes.

"Q   So that would put it somewhere around a quarter to four, right?

"Mr. Ranum: Objected to. No proper foundation as to when this lunch began and when it ended.

"Q   I will withdraw that question. \* \* \*

\*   \*   \*   \*   \*

"Q   Would it be fair to say that it was about a quarter to four when you finished lunch?

"A   Yes.

"Q   And then did your dad come home after lunch?

"A   He came home about a quarter to five.

"Q   And when your dad came home you went down to the station at that time, is that right?

"A   Yes."

Defendant's claims of error relate to the foregoing rebuttal testimony of the father and to the "limitations" on the cross-examination of the child.

■   We find no error in defendant's claim that the court improperly limited the cross-examination of the complaining witness. The only ob-

jection thereto, which at first was sustained, was subsequently overruled, and cross-examination at length was permitted by the court and engaged in by defendant's counsel.

■ Likewise, we find no error in the reception of the testimony of the child's father in rebuttal as above described. In his original testimony he had related his version of the conversation which took place between him and defendant on June 4. Therein he stated that he had questioned defendant as to whether he had "molested" the daughter. In defendant's testimony as to this conversation, he stated that the words used by the father in such question had been "fooling around," not "molesting." He also denied that he had then stated that he had "had trouble with other kids"; or that he had then asked the father, "Have you called the police?" In this phase of the evidence it was within the discretion of the trial court to permit the state to recall the father for clarification, if any, of these differing versions of the conversation described. Ordinarily, what is proper rebuttal rests almost wholly in the discretion of the trial court. Briggs v. Chicago Great Western Ry. Co. 248 Minn. 418, 80 N. W. (2d) 625.

■ With respect to the conversations between the child and her mother on Sunday, June 4, 1961, we find no error in the court's reception of their testimony with respect thereto. It is undisputed that such conversation took place shortly after the June 4 incident and was in such close proximity to it as to make it part of the res gestae as well as being corroborative of the child's complaint as to defendant's alleged misconduct. In relating this incident it was natural for the child to also tell her mother of the incident of June 3. State v. Toth, 214 Minn. 147, 7 N. W. (2d) 322; State v. Gandel, 173 Minn. 305, 217 N. W. 120; State v. Ingraham, 118 Minn. 13, 136 N. W. 258. This court stated in State v. Toth, 214 Minn. 150, 7 N. W. (2d) 325:

"* * * The fact that the injured party complained to her mother several hours after the attack goes only to credibility, which is a matter entirely within the purview of the jury."

■ Notwithstanding the absence of error in the foregoing procedure, we are of the opinion that the judgment of conviction herein

must be reversed and a new trial ordered on other grounds forming the basis for this appeal. These have reference to the inquiry made of defendant by counsel for the state in cross-examination as to whether he (defendant) had "ever engaged in this type of activity with any minor children" and to the remark of such counsel in his closing argument that "so often when you have crimes concerning sex and an adult molester, the adult will do away with the child to cover his tracks." Defendant in his testimony had denied the charge against him, while the testimony of the complaining witness was directly opposite in its effect. The determination of the issue to be decided narrowed down to a question of the credibility of these two parties. In such a situation extreme care must be taken to eliminate improper statements or questions which would have the effect of inflaming or prejudicing the jury in its determination as to where credibility should be placed, particularly where, as here, no previous accusations or convictions against defendant might have justified the question described. It is true that the jury was instructed to disregard the question, but we can only conclude that its interjection in the proceedings may have inflamed or prejudiced the jury in passing upon the question of defendant's credibility. In this respect the case is distinguishable from State v. Gandel, *supra,* where there was "ample evidence of guilt" to support the state's case, and the jury's determination had not narrowed to a question of credibility.

Likewise, the statements of the prosecuting attorney in his final argument as above set forth may well have prejudiced or inflamed the jury against the defendant. When such a situation is presented, it is doubtful if a cautionary instruction by the court will undo the damage. As stated in State v. Haney, 222 Minn. 124, 125, 23 N. W. (2d) 369, 370:

"* * * There must be no conduct, either by argument or by the asking of irrelevant questions, the effect of which is to inflame the prejudices or excite the passions of the jury against the accused."

Under these principles and in view of the circumstances described, we are of the opinion that there must be a new trial.

Reversed and new trial ordered.