*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0540**

State of Minnesota,
Respondent,

vs.

Albert Leroy Goranson,
Appellant.

**Filed March 23, 2015
Affirmed
Reilly, Judge**

Clay County District Court
File No. 14-CR-12-3816

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges two convictions of first-degree criminal sexual conduct, arguing that the district court abused its discretion by allowing the state to introduce evidence of items found in appellant's gun safe to show the absence of mistake or accident. We affirm.

## FACTS

The present case arises out of appellant's first-degree criminal sexual conduct convictions committed against his then-five-year-old daughter, A.G. On more than one occasion, appellant sexually abused his daughter by inserting his finger into her vagina. This conduct occurred when A.G. watched movies with her father, when she was swimming, and when A.G. was in her bunk bed at night. Appellant "stuck his finger in [her] private part" and "[m]oved it around." A.G. stated that it felt "bad" when appellant put his finger into her vagina, and she "usually [] said '[o]w.'"

The initial report occurred at the end of September 2012. On September 30, 2012, A.G. was watching a movie with appellant in the basement of the family's house. A.G. was sitting on appellant's lap watching the movie when appellant "stuck his thumb in [her] private part." Appellant moved his finger around inside of A.G., causing her pain. A.G. told her mother that appellant "stuck his finger up her butt." A.G.'s mother clarified that appellant inserted his finger into A.G.'s "front butt," which A.G.'s mother understood to be her vaginal area.

The following day, A.G.'s mother took her to a medical clinic and reported the abuse. Appellant had returned to work in Williston and was not at home. The incident was referred to the Moorhead police department and assigned to a detective responsible for investigating the matter. The detective went to appellant's house to take pictures of the basement and interview A.G. and her mother. A Clay County social services worker conducted a forensic interview with A.G. at the Red River Children's Advocacy Center. A.G. indicated on a drawing that appellant touched her vagina. A.G. also described an

incident where appellant's clothes became wet and A.G. believed that appellant had "pee[d] on himself."

The detective set up an interview with appellant and informed him that there were allegations of inappropriate contact between appellant and A.G. Appellant claimed these allegations were the result of a "misunderstanding." The detective disclosed several different instances in which A.G. claimed appellant touched her vagina. Appellant told the detective that "his finger may have accidentally got into her butt" when he picked her up, but he insisted that any contact was accidental.

A few weeks later, A.G.'s mother opened appellant's gun safe and discovered several items inside, including a little girl's swimsuit, two pairs of A.G.'s underwear, another pair of little girl's underwear that did not belong to A.G., and numerous photographs of young girls and women, some of which were pornographic. Several of the photographs were loose pictures printed on printer paper and others were pasted collage-style into a spiral notebook. Most of the pictures were of small children, including A.G. One picture showed a small girl's vagina being spread open by an adult male's hand. A.G.'s mother identified it as a picture of her daughter's vagina. A.G.'s mother immediately turned these items over to the detective. The detective conducted a follow-up interview with appellant the next day and confronted him with the items found in the gun safe. Appellant admitted that he masturbated into the underwear but did not provide further information about why he kept these items.

The state charged appellant with one count of first-degree criminal sexual conduct, penetration or contact with a person under the age of 13 when the perpetrator is more

3

than 36 months older than the victim, and one count of first-degree criminal sexual conduct, penetration or contact with a victim under the age of 13 with a significant relationship with the perpetrator. The state later amended the complaint to add two counts of second-degree criminal sexual conduct as lesser-included charges.

Appellant sought to exclude evidence of the items found in the gun safe, arguing that the prejudicial effect outweighed any evidentiary value. The state opposed, claiming the evidence was relevant to show motive and intent under Minnesota Rule of Evidence 402. The district court denied appellant's motion to exclude evidence of the images depicting children and the items of clothing. The district court determined sua sponte that the challenged evidence qualified as *Spreigl* evidence and was admissible "as evidence of another crime, wrong, or act in order to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" under evidentiary rule 404(b). The district court stated that the evidence would be admitted and considered solely for the limited purpose of assessing whether appellant "acted accidentally or without sexual intent . . . at the times of the incidents in issue." Following the district court's decision permitting the state to introduce the contested evidence, appellant waived his right to a jury trial.

A bench trial was held in October 2013. Appellant testified on his own behalf. Appellant denied putting his finger into A.G.'s vagina but admitted he may have accidentally penetrated her when he was "picking her up" or "moving her." Appellant admitted that there were a "couple of events" in which appellant was "wet" on his "belly button," but explained that it was due to the fact that he "spill[ed] a glass of water" that

4

got on the "back side of [A.G.'s] butt," and another instance in which there was a leak in the bathroom upstairs that leaked onto his bed. Appellant admitted that he kept pictures of little girls and articles of little girls' clothing in his gun safe, but stated he did so "[t]o keep them out of the reach of children." Appellant testified that he found the girls' underwear and swimsuit bottoms in the laundry room, masturbated into them, and "saved them to get rid of them" by putting them in the gun safe. Appellant admitted to owning a notebook containing, among other things, a picture of his daughter's exposed vagina. Appellant stated he took the picture in 2007 to document a diaper rash and failed to destroy the picture because the paper shredder was malfunctioning.

The district court found appellant guilty on two counts of first-degree criminal sexual conduct and sentenced him to 144 months in the custody of the commissioner of corrections and ten years of conditional release on count one. On count two, the district court sentenced appellant to 180 months in custody to run concurrently with the sentence imposed for count one. The district court ordered appellant to register as a predatory sex offender and submit a sample of his DNA. The district court found appellant guilty on counts three and four for second-degree criminal sexual conduct but dismissed them as lesser-included offenses. This appeal followed.

## DECISION

The district court admitted evidence of the items found in appellant's gun safe to refute appellant's argument that he acted accidentally or without sexual intent during the instances recounted by A.G. Appellant challenges the district court's decision, arguing that the items are neither relevant nor material. "Evidentiary rulings rest within the sound

5

discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). Appellant bears the burden of demonstrating that an error occurred and that he was prejudiced. *State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007).

## I.

The state offered the gun case evidence as immediate-episode and res gestae evidence to provide context for A.G.'s statements concerning the abuse allegations. The district court admitted it as *Spreigl* evidence for the purpose of showing absence of mistake. Although this issue was not addressed below, we may affirm a district court's decision on grounds other than those relied on by the court below. *Dukes v. State*, 718 N.W.2d 920, 921-22 (Minn. 2006). We conclude that the evidence was properly admitted to rebut appellant's conflicting statements and his defense theory of mistake.

Shortly after A.G.'s mother reported the abuse, a Moorhead police department detective interviewed appellant and informed him of the allegations. Appellant denied committing a sexual-conduct crime against A.G. and further denied that he was aroused by young female children. Appellant claimed that the allegations were the result of a "misunderstanding," and that his finger may have "accidentally got into [A.G.'s] butt." Several weeks after the first interview, A.G.'s mother discovered a gun safe containing pictures of A.G.'s vagina and A.G.'s underwear that appellant later admitted he used for masturbation. Testimony concerning the evidence discovered in the gun safe rebuts appellant's claim that A.G. was mistaken or that he accidentally inserted his finger into A.G.'s vagina.

6

"Rebuttal evidence is that which explains, contradicts, or refutes the defendant's evidence. Its purpose is to cut down defendant's case and not merely to confirm that of the plaintiff." *Farmers Union Grain Terminal Ass'n v. Indus. Elec. Co.*, 365 N.W.2d 275, 277 (Minn. App. 1985). What qualifies as proper rebuttal evidence rests "almost wholly" in the discretion of the district court. *State v. Turnbull*, 267 Minn. 428, 434, 127 N.W.2d 157, 162 (1964). This court has previously recognized that a district court may admit rebuttal evidence to show that a defendant's version of events is untrue. *See, e.g.*, *State v. Swanson*, 498 N.W.2d 435, 440 (Minn. 1993) (concluding district court did not abuse its discretion by admitting evidence to rebut defendant's testimony); *Turnbull*, 267 Minn. at 434, 127 N.W.2d at 161-62 (finding "no error" in district court's admission of rebuttal testimony to clarify differing versions of events); *State v. Stevens*, 580 N.W.2d 75, 80 (Minn. App. 1998) (determining district court did not abuse its discretion in admitting rebuttal evidence that refuted appellant's alibi), *review denied* (Minn. Aug. 18, 1998).

In *Ture v. State*, the petitioner sought postconviction relief from his first-degree murder conviction arguing that the district court erred by admitting notebooks and address books seized during the underlying investigation. 681 N.W.2d 9, 16 (Minn. 2004). The notebooks and address books contained women's names, license plate numbers, addresses, and phone numbers. *Id.* The petitioner argued that the evidence was improperly admitted *Spreigl* evidence. *Id.* at 16-17. The district court concluded that the evidence did not constitute evidence of bad acts "because there is nothing per se wrong with collecting information on women." *Id.* at 17. The supreme court agreed, and

7

concluded that the evidence was admissible because "collecting information on women was [petitioner's] habit and routine practice." *Id*. The supreme court affirmed the lower court's determination that the notebooks and address books seized as part of the investigation did not qualify as *Spreigl* evidence and were properly admitted. *Id*.

Here, as in *Ture*, the items in the gun safe demonstrate appellant's habits and routine practices and rebut his version of events. Appellant testified that he masturbated into the underwear and swimsuit only because those items happened to be conveniently at hand and collected the images in his notebook only for the purpose of shredding them later. We conclude that the district court did not abuse its broad discretion in allowing the state to introduce evidence of the items found in the gun safe to contradict and refute appellant's testimony. *See also Farmers Union Grain Terminal Ass'n*, 365 N.W.2d at 277 ("The fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in rebuttal.").

**II.**

We further determine that the evidence was admissible under rule 404(b). Generally, evidence of another crime, wrong, or act, known as *Spreigl* evidence, is not admissible to prove the character of a person or that the person acted in conformity with that character in committing an offense. Minn. R. Evid. 404(b) (2012); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). However, such evidence may be admissible to demonstrate factors such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). *Spreigl* evidence may also be admitted to show that the conduct on which the charge was based

8

actually occurred or to refute an argument that it was "a fabrication or a mistake in perception by the victim." *State v. Wermerskirchen*, 497 N.W.2d 235, 242 (Minn. 1993).

A district court follows a five-step process to determine whether to admit other-acts evidence. *State v. Smith*, 749 N.W.2d 88, 93 (Minn. App. 2008). The steps are:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Id*. at 93-94.

The district court addressed each of the five factors and determined that the evidence was admissible. On appeal, appellant only challenges the fourth prong of the test and contends that the evidence was neither relevant nor material.

The district court admitted the evidence as proof of "absence of mistake or accident" and considered it "solely for purposes of evaluating [appellant's] claim that the alleged contact was accidental and/or a misunderstanding." Evidence used to demonstrate a common scheme or plan "must have a marked similarity in modus operandi to the charged offense." *State v. Ness*, 707 N.W.2d 676, 688 (Minn. 2006). In determining the relevance of *Spreigl* evidence, the district court should "focus on the closeness of the relationship between the other [act] and the charged crimes in terms of time, place and modus operandi." *Wermerskirchen*, 497 N.W.2d at 240.

The record supports the district court's determination that the items in the gun safe were relevant and material to the state's case. The items in the safe share a marked

9

similarity with the charged offense. The district court heard testimony that appellant put his finger inside his daughter's vagina and ejaculated. Appellant also simulated sexual conduct using items stored in the gun case by looking at pictures of young girls, including a photograph of his daughter's vagina, and ejaculating into A.G.'s underwear.

Other-acts evidence is admissible under the common scheme or plan exception to show "that the conduct on which the charged offense was based actually occurred or to refute the defendant's contention that the victim's testimony was a fabrication or mistake in perception." *Ness*, 707 N.W.2d at 688 (quoting *Wermerskirchen*, 497 N.W.2d at 241-42). The district court had a legitimate purpose for admitting evidence of the items found in the gun safe to refute appellant's argument that A.G.'s sexual-abuse allegations were the result of a misunderstanding. In both instances, the focus is on the same victim with the same result: appellant became sexually aroused by A.G.'s vagina and ejaculated. Given the record before us, we conclude that the district court did not abuse its discretion in determining that the *Spreigl* evidence was relevant and material to the charged offense.

We further determine that even if admission of the evidence was erroneous, the error was harmless under the facts of this case and in light of A.G.'s credible and consistent report of sexual abuse coupled with the social worker's account of the forensic interview. *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998) (requiring a showing that admission of evidence was prejudicial and significantly affected the verdict).

**III.**

Appellant raises additional arguments regarding the adequacy of a *Miranda* warning during a police interview. Appellant has not supported these supplemental

arguments with relevant facts or legal authority and we consider them waived. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (declining to consider matters outside the record on appeal).

**Affirmed.**