*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0381**

In the Matter of the Welfare of: K. T., Child.

**Filed October 26, 2015
Affirmed
Reilly, Judge**

Ramsey County District Court
File No. 62-JV-14-2671

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St.
Paul, Minnesota (for respondent)

        Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and

Stoneburner, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

        Appellant K.T. argues that he is entitled to a new trial because the district court

improperly allowed the prosecutor to present rebuttal testimony to counter appellant's

testimony, which had previously been stricken from the record.  We affirm.

---

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

# FACTS

On October 6, 2014, appellant and three other young men confronted K.V. at his home regarding the repayment of a debt. K.V. recognized appellant as someone he interacted with in the past and to whom he owed money. The four men beat K.V. with their fists and appellant "pistol whipped" K.V. on the head with his gun. K.V.'s mother Y.X., and his brother Ko.V., were inside the house when the fight began and ran outside in an attempt to intervene. Appellant pointed the gun at Y.X. and Ko.V. and asked Y.X. if she "want[ed] to die." Y.X. and Ko.V. were scared and went back inside the house. Y.X. later identified appellant in court as the man who pointed a gun at her.

Another witness, K.V.'s neighbor R.L., also attempted to help K.V. R.L. was working in his garage with the door closed when he heard an "angry argument" outside. R.L. looked out of his garage and saw three men "beating up" K.V.; each of the three men was punching, kicking, and beating K.V. One of the men was assaulting K.V. with a bar and two other men were beating K.V. with their fists. R.L. testified that as he approached the group, appellant "stepped back and pulled out a gun, cocked it, put it right toward me, aimed it right at me and said get out of here." R.L. immediately left the area and returned to his garage. R.L. heard the gun fire behind him as he ran away. K.V. broke away from the group and ran into the house to call the police.

The state charged appellant with one count of aiding and abetting second-degree assault and one count of second-degree riot. The state later amended the petition to include one count of second-degree assault against R.L. and two counts of terroristic threats against Y.X. and Ko.V. Because appellant was 15 years old at the time of the

offense, the matter was subject to delinquency proceedings. The district court held delinquency proceedings over a period of several days between November 2014 and January 2015.

During a pretrial conference, the defense argued that appellant "may have been sick from school and would have been home" during the October 6 confrontation. At trial, appellant's mother, K.Y.V., testified that appellant was home sick from school on that date. According to K.Y.V., appellant spent approximately two and a half hours on the main level of the house near her and the remainder of the day in the basement fixing his bike. K.Y.V. saw appellant two or three more times throughout the afternoon after he went down into the basement. She testified that she was home all day with appellant and appellant did not leave the house on October 6.

Appellant was on probation with the Ramsey County Juvenile Probation, Intensive Supervision Unit, during the time period in question. A probation officer came to the house at approximately 5:00 p.m. on October 6 to meet with appellant for a routine home-check. The probation officer did not have a record of appellant's absence from school on that day.

Following K.Y.V.'s testimony, appellant took the stand in his own defense on January 21. Appellant testified that he was sick on October 6 and spent the day at home. He denied interacting with K.V., R.L., Y.X., or Ko.V., on October 6 and denied threatening anyone with a gun. Court adjourned at 4:30 p.m. on January 21 during the defense attorney's direct examination. When the proceedings reconvened on January 28, the defense attorney informed the district court that appellant did not want to continue his

3

testimony. The district court judge stated: "[I]f you refuse to testify further, I will not under any circumstances consider anything that you testified to so far. I will completely ignore any testimony that you've given." Appellant indicated that he understood. The prosecutor stated that she intended to cross-examine appellant on his January 21 testimony. The district court indicated that it could not compel appellant to testify, but told the prosecutor: "[I]f you have witnesses who would tend to rebut what he has testified to, that does not stop you from calling in such witnesses." The district court judge asked appellant to take the stand and instructed him as follows:

> [District court judge]: [A]s I said before, there's no way that any of us can force you to testify if you don't want to testify, but given that you have already taken the stand and testified on direct examination, it would certainly not be fair to allow that testimony to stand without allowing the state the opportunity to cross-examine you. So, under the circumstances, I will strike any testimony that you've given in this case and will not consider it for any purpose in this trial. However, I will allow the state, if it wishes and has witnesses who can rebut what you have testified to, to come forward and give rebuttal testimony.

The state called a rebuttal witness. The defense objected on the ground that, because appellant's testimony was stricken, any rebuttal testimony would be improper. The district court overruled the objection. The rebuttal witness was a police officer who knew appellant and was familiar with his home and its layout. The police officer testified that a door at the back of the house leads directly to the basement, and confirmed that someone could exit the basement without being seen by anyone on the main floor.

4

On February 17, 2015, the district court adjudicated appellant delinquent on three of the five counts, including two counts of second-degree assault and one count of terroristic threats. The district court "continued without adjudication" the remaining two counts of second-degree riot and terroristic threats. The district court placed appellant in Woodward Academy and ordered him to comply with all programming and probationary instructions. This appeal followed.

## D E C I S I O N

Appellant argues that he is entitled to a new trial because the district court abused its discretion by allowing the prosecutor to present rebuttal testimony to counter appellant's previously stricken testimony. Appellant does not challenge the district court's decision to strike his testimony, nor does he make a sufficiency-of-the-evidence challenge. Evidentiary rulings rest within the district court's discretion and will not be reversed absent an abuse of discretion. *State v. Glaze*, 452 N.W.2d 655, 660 (Minn. 1990). Appellant bears the burden of demonstrating that admission of the evidence was prejudicial and significantly affected the verdict. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Here, the district court admitted the police officer's rebuttal testimony which refuted appellant's mother's testimony. "Rebuttal evidence is that which explains, contradicts, or refutes the defendant's evidence." *Farmers Union Grain Terminal Ass'n v. Indus. Elec. Co*., 365 N.W.2d 275, 277 (Minn. App. 1985). What qualifies as proper rebuttal evidence rests "almost wholly" in the district court's discretion. *State v. Turnbull*, 267 Minn. 428, 434, 127 N.W.2d 157, 162 (1964); *State v. Anderson*, 405

5

N.W.2d 527, 531 (Minn. App. 1987) (applying abuse-of-discretion standard of review). Appellant's mother K.Y.V. testified that appellant was home sick on October 6 and spent the afternoon in the basement working on his bike. K.Y.V. stated that she was home all day with appellant and he did not leave the house. The district court did not find this testimony credible, stating that "[K.Y.V.] did not inform her son's attorney of this information until after the trial had begun" and that "[K.Y.V.] has a motive to fabricate testimony in order to protect her son."

Instead, the district court credited the testimony of a rebuttal witness who was familiar with the layout of the house and testified that it was possible to exit the home from the basement by a separate door without being seen by someone inside the house. Rebuttal evidence may be admitted to show that the defense's version of events is untrue. *See State v. Stevens*, 580 N.W.2d 75, 80 (Minn. App. 1998) (determining district court did not abuse its discretion in admitting rebuttal evidence to refute appellant's alibi), *review denied* (Minn. Aug. 18, 1998); *Turnbull*, 267 Minn. at 434, 127 N.W.2d at 161-62 (finding "no error" in district court's admission of rebuttal testimony to clarify differing versions of events). The district court acted within its discretion by allowing the police officer to testify as a rebuttal witness to appellant's mother's testimony.

In any event, "a new trial is not required unless there is a reasonable possibility that the wrongfully-admitted evidence significantly affected the verdict." *State v. Asfeld*, 662 N.W.2d 534, 544 (Minn. 2003) (quotation omitted). Here, appellant has not demonstrated that the rebuttal testimony significantly affected his delinquency adjudication. On appeal from a delinquency-petition determination, "[i]t is the exclusive

6

role of the factfinder to determine the weight and credibility of witness testimony." *In re A.A.M.*, 684 N.W.2d 925, 927 (Minn. App. 2004), *review denied* (Minn. Oct. 27, 2004). "[A] conviction may rest on the testimony of a single credible witness." *State v. Miles*, 585 N.W.2d 368, 373 (Minn. 1998).

The district court determined that the witness's testimony identifying appellant as the assailant was credible. The record supports the district court's determination. K.V. testified that appellant assaulted him on October 6 and "pistol whipped" him with a gun. K.V. recognized appellant as someone with whom he had interacted in the past. The district court found that K.V. "testified credibly." Y.X. and Ko.V. testified that they saw four men assaulting K.V. and attempted to intervene. Y.X. identified appellant as the man who pointed a gun at her and asked her if she "want[ed] to die." The district court found that Y.X. "provided credible testimony and a credible in-court identification" of appellant as the assailant. R.L. testified that an individual pointed a gun at him, cocked the gun, ordered him to leave, and fired the gun behind him as he ran away. K.V. identified appellant as the man who aimed the gun at R.L., Y.X., and Ko.V. The district court found this testimony credible. Given the strength of the eyewitness testimony and the district court's credibility determinations, we determine that there is not a reasonable probability that the rebuttal-witness's testimony significantly affected the adjudication. Appellant has not met his burden of demonstrating that the district court erred.

**Affirmed.**